| | |
|---|---|
| CHERRIE HACKNEY ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DYNAMIC RECOVERY SERVICES, INC. ) <br> INC.; and CAROLYN MCNEILL, ) <br> Defendants. ) | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

The Fair Debt Collection Practices Act (FDCPA or Act), 15 U.S.C. §§ 1692, *et seq.* imposes civil liability on "debt collectors" for certain prohibited debt collection practices. The Act includes a private right of action by "any person" adversely affected by the violation. Congress intended private actions to be the main vehicle for enforcing the Act: "The committee views this legislation as primarily self-enforcing; consumers who have been subject to collection abuses will be enforcing compliance." S. Rep. No. 382, 95th Cong., 1st Sess. 5, *reprinted in* 1977 U.S.C.A.A.N. 1695, 1696.

North Carolina has also enacted legislation to protect consumers from abusive, deceptive or unfair debt collection practices, North Carolina General Statute §§ 58-70-90 *et seq.* Part 3. Prohibited Practices by Collection Agencies Engaged in the Collection of Debts from Consumers (PPCA) and North Carolina's Prohibited Acts by Debt Collectors Statute, N.C. Gen. Stat. §§ 75-50 *et seq.* (PADC).

The plaintiff, Cherrie Hackney, by and through her undersigned attorney, sues the defendants, Dynamic Recovery Services, Inc. (Defendant DRS) and Carolyn McNeill (Defendant McNeill), and alleges and says as follows:

1

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d) and pursuant to 28 U.S.C. § 1367. This Court also has supplemental jurisdiction over the state law claims as those arise from a common nucleus of operative facts.

2. This action arises out of defendants' violations of the FDCPA, PPCA, and/or the PADC in their illegal efforts to collect a consumer debt from Mrs. Hackney.

3. Venue is proper in this District because the acts and transactions occurred here, Mrs. Hackney resides here, and defendants transact business here.

4. This case is brought within one year of the violations in compliance with the statute of limitations at 15 U.S.C. § 1692k(d) and within the applicable statute of limitations for claims arising under North Carolina law.

## PARTIES

5. Plaintiff Cherrie Hackney is a natural person who resides in the town of Moncure, Chatham County, North Carolina, and is a "consumer" and/or a person affected by a violation of the FDCPA as those terms are defined by 15 U.S.C. §§ 1692a(3), 1692k, N.C. Gen. Stat. § 58-70-90(2), and N.C. Gen. Stat. § 75-50(1).

6. Defendant DRS is, upon information and belief, a foreign, professional corporation organized under the laws of the State of Texas.

7. Defendant DRS, upon information and belief, maintains its principal place of business at 4101 McEwen Road, Suite 150, Farmer's Branch, Texas 75244.

8. Defendant DRS is engaged in the collection of debts from North Carolina consumers using the mail and telephone.

9. Defendant DRS regularly attempts to collect consumer defaulted debts alleged to be due to another.

10. Defendant DRS is registered as a collection agency with the North Carolina Department of Insurance whose permit number is 2080.

11. Defendant DRS was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and a "collection agency" as that term is defined in § 58-70-90(1).

12. Defendant McNeill is, upon information and belief, an employee for Defendant DRS.

13. Defendant McNeill is engaged in the collection of debts from North Carolina consumers using the mail, telephone, and/or North Carolina state court system.

14. Defendant McNeill regularly attempts to collect consumer debts alleged to be due to another.

15. Defendant McNeill was and is a "debt collector" as defined by 15 U.S.C. §1692a(6) and N.C. Gen Stat. § 75-50(3).

## FACTUAL ALLEGATIONS

16. Mrs. Hackney is a consumer or other person as that term is defined in 15 U.S.C. § 1692a(3), N.C. Gen. Stat. § 58-70-90(2), and N.C. Gen. Stat. § 75-50(1).

17. At some point, Mrs. Hackney incurred a debt by signing for a car loan for her daughter.

18. The car was not used for a business venture, but rather, was used for personal use by Mrs. Hackney's daughter.

19. The car that was the subject of the loan was involved in an auto accident and totaled.

20. Mrs. Hackney did not have any gap insurance on the vehicle and was upside down on the financing for the car loan.

21. After her insurance failed to pay a sufficient amount for the balance of the car loan, Mrs. Hackney was unable to pay off the deficiency and meet the terms of any proposed payment plan, the loan went into default.

22. The car loan is a "debt" as that term is defined by 15 U.S.C. § 1692a(5), N.C. Gen Stat. § 58-70-90(3) and N.C. Gen. Stat. § 75-50(2).

23. Subsequently, the car loan was sold or otherwise transferred or placed with Defendant DRS.

### *Collection Calls in July 2009*

24. At the end of July, 2009, Timothy Walker, an employee of Defendant DRS, telephoned Mrs. Hackney in an attempt to collect on the defaulted car loan.

25. Mr. Walker said words to the effect that if Mrs Hackney could come up with $2500 by that very day, DRS would not put a suit on her for the remainder of the car loan.

26. Also at the end of July, 2009, Defendant McNeill telephoned Mrs. Hackney in an attempt to collect on the defaulted car loan.

27. Defendant McNeill said words to the effect that if Mrs. Hackney did not pay money to Defendant DRS, DRS would take Mrs. Hackney to court and Mrs. Hackney would have to come up with $11,000 for court costs and for the remainder of the car loan.

28. Defendant McNeill further stated words to the effect to Mrs. Hackney that it was against the law to buy a car in a person's own name and let other people drive it.

29. Mrs. Hackney replied that she did not know of any law that prohibited her from getting the car loan.

30. Defendant McNeill kept insisting that Mrs. Hackney had better take care of this matter (by paying money to Defendant DRS) before a judgment is put on Mrs. Hackney.

4

Case 1:10-cv-00432-UA -PTS   Document 1   Filed 06/04/10   Page 4 of 10

31. At various times, both the original creditor and debt collectors attempted to negotiate the balance of the loan; however, Mrs. Hackney is of limited financial means and has only social security disability and retirement disability from her job with the State of North Carolina.

32. Mrs. Hackney became highly frightened, frustrated and agitated that Defendant McNeill was threatening her.

33. Defendant McNeill accused Mrs. Hackney of committing a crime.

34. Defendant DRS, through its employees Mr. Walker and Defendant McNeill, threatened to sue Mrs. Hackney when they had not intent to do so.

35. To the date of this filing, Defendant DRS has not sued Mrs. Hackney on the alleged indebtedness.

36. A review of the records of the Administrative Offices of the Courts for the State of North Carolina indicates that, at most, Defendant DRS has been a party to three lawsuits in North Carolina, two filed in 2001 and one in 2006.

37. Defendant McNeill wrongly informed Mrs. Hackney that Mrs. Hackney would have a judgment against her without being afforded due process of law and an opportunity to assert any possible defenses.

38. Mrs. Hackney felt frustrated and harassed.

### *Respondeat Superior Liability*

39. The acts and omissions of the individual Defendant named herein, and other debt collectors employed as agents by Defendant DRS who communicated with Mrs. Hackney as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant DRS.

40. The acts and omissions by the individual Defendant named herein, and other debt collectors, were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant DRS in collecting consumer debts.

41. By committing these acts and omissions against Mrs. Hackney, the individual Defendant named herein and other debt collectors were motivated to benefit their principal Defendant DRS.

42. Defendant DRS is therefore liable to Mrs. Hackney through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including, but not limited to, violations of the FDCPA, PPCA, and PADC in the illegal attempts to collect this debt from Mrs. Hackney.

43. Defendants' illegal calculated collection efforts are highly upsetting to Mrs. Hackney.

44. Mrs. Hackney has suffered actual damages as a result of the illegal collection activities by these Defendants in the form of anger over how she was treated by the Defendants.

45. Mrs. Hackney cried over the hostile and rude treatment she received from Defendant McNeill.

46. Mrs. Hackney suffered anxiety, emotional distress, fear and frustration over the debt collectors' hostility towards her, humiliation, and embarrassment, and diminished ability to sleep, amongst other negative emotions.

47. Mrs. Hackney sensed an overwhelming sense of helplessness and was frustrated because she could not pay the deficiency amount.

48. Mrs. Hackney experienced heart palpitations after the phone calls and had to double the dosage of her heart medication afterwards. Additionally, Mrs. Hackney had to take a nerve pill to calm down, even though this is not part of her regular medical regimen.

## TRIAL BY JURY

49. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. US Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT ONE

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692 *et seq*.

50. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(7), amongst others.

52. As a result of Defendants' violations of the FDCPA, Mrs. Hackney is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1) from each and every Defendant; statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) from each and every Defendant; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendants herein.

## COUNT TWO

## VIOLATION OF THE NORTH CAROLINA DEBT COLLECTION STATUTE

53. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

54. Defendant DRS is a collection agency as defined by N.C. Gen. Stat. § 58-70-15(a).

55. Defendant DRS's conduct as alleged above violated N.C. Gen. Stat. § 58-70-95, N.C. Gen. Stat. §58-70-110, and N.C. Gen. Stat. § 58-70-115.

56. Defendant DRS otherwise violated N.C. Gen. Stat. §§ 58-70-1 to 58-70-130, and/or §§ 75-50 to 75-56, and accordingly Mrs. Hackney is entitled to recovery of a civil penalty up to two thousand dollars for each violation under N.C. Gen. Stat. § 58-70-130(b), and reasonable attorney's fees under Chapter 75 and N.C. Gen. Stat. § 58-70-130(c).

### COUNT THREE
### UNFAIR AND DECEPTIVE TRADE PRACTICES
### VIOLATION OF NORTH CAROLINA'S PROHIBITED ACTIONS BY DEBT COLLECTORS STATUTE
### AS TO DEFENDANT MCNEILL

57. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

58. The North Carolina Unfair and Deceptive Trade Practices Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

59. Defendant McNeill's practices alleged herein constitute unfair and deceptive acts or practices in or affecting commerce pursuant to N.C. Gen. Stat. § 75-1.1; are illegal, unfair or deceptive acts or practices in the conduct of trade or commerce and are inherently deceptive; offend public policy and are immoral, unethical, oppressive and unscrupulous.

60. The collection of debts or alleged debts is a consumer transaction within the meaning of trade or commerce.

61. Defendant McNeill's use of illegal collection practices and strategies all constitute unfair and deceptive trade practices.

8

62. Defendant McNeill's illegal collection communications proximately caused harm to Plaintiff, caused harm to North Carolina consumers, and were deceptive in their effect upon an average consumer.

63. Defendant McNeill is not registered as a collection agency pursuant to N.C. Gen. Stat. § 58-70-1.

64. The foregoing acts and omissions of the Defendant McNeill constitute numerous and multiple violations of the PADC including, but not limited to, N.C. Gen. Stat. §§ 75-51, 75-51(2), 75-51(7), 75-54(4), amongst others.

65. Defendant McNeill's conduct as alleged above violated N.C. Gen. Stat. §§ 75-50 *et seq.* and accordingly Mrs. Hackney is entitled to recovery of a civil penalty of $2000.00 for each separate offense under N.C. Gen. Stat. §§ 75-8 and 75-56, and reasonable attorney's fees under Chapter 75.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered:

1. for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant jointly and severally;

2. for an award of statutory damages of $1,000.00 per violation from each and every Defendant jointly and severally pursuant to 15 U.S.C. § 1692k(a)(2)(A);

3. for an award of costs of litigation and reasonable attorney's fees from each and every Defendant jointly and severally pursuant to 15 U.S.C. § 1692k(a)(3);

4. for an award of actual damages pursuant to N.C. Gen. Stat. § 58-70-130(a);

5. for an award of statutory damages of $2,000.00 per violation pursuant to N.C. Gen. Stat. § 58-70-130(b);

6. for an award of costs of litigation and reasonable attorney's fees pursuant to N.C. Gen. Stat. § 58-70-130(c);

7. for an award of statutory damages of $2,000.00 for each separate offense from Defendant McNeill pursuant to N.C. Gen. Stat. §§ 75-8, 75-56, and 75-1.1 *et seq.*, as well as any

9

Case 1:10-cv-00432-UA -PTS   Document 1   Filed 06/04/10   Page 9 of 10

attorney's fees available thereunder;

8. for an award of the costs of suit, any discretionary costs as may be allowable by law, pre-judgment and post-judgment interest from each and every Defendant jointly and severally; and

9. for further relief as the Court deems just and proper under the circumstances.

Respectfully submitted this 4th day of June, 2010.

                         MARTIN ATTORNEY AT LAW, PLLC

                         By: /s/ Angela O. Martin
                              Angela O. Martin, Esq.
                              NC Bar 34951
                              Attorney for Plaintiff
                              Martin Attorney at Law, PLLC
                              1911 Keller Andrews Road
                              Sanford, North Carolina 27330
                              (919) 708-7477, FAX: (888) 872-4232
                              angela@angelamartinlaw.com